Auto Owners Finance Company, Inc. *v.* Arthur Evirs.

Prudential Acceptance Company, *Intervenor.*

*Everett J. Slate*, of Massachusetts; *Robert W. Upton* and *Frederick K. Upton* (*Mr. Frederick K. Upton* orally), for the plaintiff.

*McLane, Davis & Carleton* and *Stanley M. Brown* (*Mr. Brown* orally), for the defendant.

*Joseph F. Kaufman*, of Massachusetts, and *Nighswander & Lord* (*Mr. Kaufman* orally), for the intervenor.

BRANCH, J.   Prior to March 20, 1943, the defendant Evirs, doing business as the Belmont Bus Line, entered into a contract with one Gordon E. Cassidy, of Boston, Massachusetts, to purchase a Dodge bus equipped with a Union City, thirty-passenger body, for a price of about $3,000.   Cassidy at this time represented himself to be the New England distributor of the Union City Body Company, Inc., Union City, Indiana, and the Trial Court specifically found that "all parties in their dealings with Cassidy acted in good faith and were innocent victims of Cassidy's fraudulent transactions."   The defendant, upon March 20, 1943, made an advance payment of $250 to Cassidy, and upon April 27, 1943, a second payment of the same amount.   Upon September 29, 1943, he made a final payment of $2,500.   The unascertained balance of the purchase price was to be covered by the delivery of a Reo bus for which Cassidy claimed to have a purchaser who was willing to pay $1,600.   Of this amount Cassidy was to pay the defendant $1,000.

There were in effect at this time certain war emergency regulations promulgated under general order No. M-100.   These regulations provided that no new commercial vehicle should be transferred except pursuant to a certificate of transfer issued by the War Production Board.   Cassidy told Evirs that the bus could not be obtained unless Evirs obtained such a certificate.   Evirs obtained the certificate on September 1, 1943, and upon October 5, 1943, the Motor Truck Sales & Equipment Company of Chicago, executed and mailed to Evirs a document purporting to be a bill of sale of the Dodge chassis here involved, which reads as follows:

"MOTOR TRUCK SALES & EQUIPMENT CO.
TIRES—PARTS—REPAIRS
2435 Cottage Grove Avenue
CHICAGO, ILL.

October 5, 1943.
Invoice No. 1132.

"Belmont Bus Line
Belmont, N. H.
1—W32 Dodge chassis & cab. 160″ W. B.—$1306.81
7.00x20 tires
Motor No. 91332607, Serial No. T118-77220
Delivery to Union City, Indiana.
   Cash on delivery   $1306.81
This is certified to be a true bill of sale.
                     Motor Truck Sales & Equipment Co.
                     By: F. J. O'Donnell
Sworn and subscribed to before me this 5 day of Oct. 1943.
                     P. F. Scholz
                          Notary Public"
                              (Notarial Seal)

The evidence indicates that the COD charge of $1306.81 was in fact paid by Cassidy out of the money advanced to him by Evirs and the chassis was then delivered to the Union City Body Company which proceeded to install the thirty-passenger body above referred to. Early in November, 1943, Evirs being disturbed by the non-delivery of the bus, sent four telegrams to the Body Company inquiring when it would be ready, and on November 18, 1943, received a reply as follows: "Your bus ready November 27." This was followed by another telegram on November 30, in which the body company said: "Your bus will not be ready until today."

On November 29, 1943, Cassidy executed to the Auto Owners Finance Company, Inc., hereinafter referred to as the plaintiff, a note for $3,000 and a mortgage purporting to transfer a 1942 Dodge chassis and a Union City body, allegedly the bus here involved. The mortgage recited that the bus was then in Boston, but it was in fact in Union City, Indiana. The defendant and the intervenor raise certain questions as to whether the mortgage was given for value and whether it was properly recorded, but in the view which we take of the case it is unnecessary to consider these questions, and the plaintiff's claim may properly be disposed of at this point.

We construe the document dated October 5, 1943 to be what it purports to be, *i.e.* a "true bill of sale" of the Dodge chassis in question, and hold that its effect was to transfer title to this chassis to the defendant upon the payment of the COD charge of $1,306.81. This charge having been paid, findably by Cassidy on Evirs' account, the title of the latter to the chassis became complete.

The plaintiff argues that "while ordinarily the delivery of a bill of sale has the effect of transferring the title, the sole purpose in the instant case was to satisfy the War Production Board requirements that 'any . . . sales agency to whom a Certificate of Transfer is presented and who has in stock a . . . vehicle of the type specified shall transfer such vehicle to the person named therein, irrespective of the terms of any contract of sale or any other commitment with any other person.' General Conservation Order M-100, Fed. Reg. Mar. 3, 1942, *p.* 1633." This argument that the bill of sale should not be given effect as a transfer because it was merely designed "to satisfy the War Production Board requirements" is one which cannot be accepted. The case is bare of evidence from which the existence of such a purpose on the part of the Motor Truck Sales & Equipment Company can be inferred, and even if such an undisclosed purpose were found to exist, this court would not hold that an instrument purporting to transfer title should, for that reason, be ignored. However laudable a purpose to fool the War Production Board may be considered in some quarters, this court cannot be asked to give it legal effect.

Thereafter, under the principle of accession, (see *Perry* v. *Pettingill*, 33 N. H. 433) the parts of the body as they were installed also became the property of the defendant, who thus obtained title to the completed bus. This fact was recognized by the Union City Body Company in its telegrams of November 18 and November 30, wherein reference was made to "your bus."

"The law of accession as applied to automobiles" is the subject of an extensive note in 92 A. L. R. 425, and from the authorities there collected it appears that the operation of the principle may be defeated if the supplier of goods and materials retains title thereto by means of a conditional sale or other similar instrument. In this case the Union City Body Company made no attempt to retain title to the body which it furnished in this way and it follows that the general rules of accession apply.

From the foregoing it is evident that upon November 29, when Cassidy executed the plaintiff's mortgage, he had no title to the bus

in question, and the plaintiff, therefore, takes nothing by its mortgage. As to the plaintiff, there must be judgment for the defendant.

The case of the intervenor raises further questions. On December 1, 1943, the Union City Body Company consigned the completed bus to Cassidy in Cambridge, Massachusetts and shipped it by the Dealers Transport Company, a common carrier, under a "straight bill of lading" which called for a COD payment for the amount due the Body Company of $1,652.18, plus the carrier's charges of $117. In order to meet these charges Cassidy applied to the Prudential Acceptance Company for another loan of $1,900. The acceptance company thereupon issued two checks, one for $1,652.18 to the order of Gordon E. Cassidy and the Union City Body Company; the other for $117 to Gordon E. Cassidy and Dealers Transport Company. These checks were endorsed by Cassidy and turned over to the Transport Company's driver to pay the COD charges. The bill of lading bearing a receipt for the same was taken by the acceptance company. It is well settled law, however, that the holder of a bill of lading acquires no better title to the property covered thereby than his assignor had. As we have already seen, the title to the bus in question was, at this time, vested in the defendant Evirs, a fact which was admitted and confirmed by the telegrams of the body company above referred to. Its only claim upon the bus, therefore, was a lien for the labor and materials expended upon it in the construction of the body, as provided in 8 Burns, Ind. Sts. Anno., 1933, ss. 43-801 and 47-552. These statutes are merely declaratory of the common law (*Grusin* v. *Stutz Motor Car Company*, 206 Ind. 296; *Vaught* v. *Knue*, 64 Ind. App. 467) and the lien given thereby is purely possessory. Hence, assuming that the finance company by its acquisition of the bill of lading, acquired the right to possession of the bus for the enforcement of this lien claim, its rights continued only so long as it retained possession of the bus. When it surrendered possession of the bus to Cassidy, as hereinafter stated, all its claims upon it were terminated and the title of the defendant thereto was thereby freed from all incumbrances. "It is upon such lien that appellant must base his right to recover in this action. In cases of common-law liens, in order that such lien may be kept alive, it is absolutely essential that the person claiming the lien should retain and hold an independent and exclusive possession of the particular chattel. Whenever he voluntarily surrenders its possession, his lien is lost, and he then has only the right of action against the person contracting for the work and supplies for the value of the same." *Vaught* v. *Knue, supra*, 471.

Following its acquisition of the bill of lading, the acceptance company executed a trust receipt naming Cassidy as trustee and purporting to convey to him the property described in the bill of lading. At the same time the parties executed a conditional sale agreement or lease purporting to convey the property from the company to Cassidy, and the company accepted in return Cassidy's note for $1,900 payable in sixty days. The conditional sale agreement purported to cover not only the bus in question but also the Reo bus which Evirs was to turn over to Cassidy on delivery of the new Dodge. The acceptance company then allowed Cassidy to take or retain possession of the bus for the purpose of delivering it to the defendant in New Hampshire. Cassidy brought the bus to Belmont, New Hampshire on December 6, and delivered it to Evirs, receiving at the same time the Reo bus for which he claimed to have a buyer.

The execution of the trust agreement and the conditional sale agreement by Cassidy could add nothing to the rights of the intervenor. In both of these agreements the finance company purported to deal with the title to the bus. That title being at the time in the defendant, these documents were wholly without legal effect. It follows that, as to the intervenor also, there should be judgment for the defendant.

*Judgments for the defendant.*

All concurred.